JOHN FALLON, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

There is no fatal variance between the indictment and the verdict, where the former charges the prisoner with having *feloniously stolen, taken and carried away from the person, etc.*, and the latter finds the prisoners *guilty as charged in the indictment, of grand larceny in stealing from the person, etc.*

The fact that certain bank-bills of another State are received and passed away as money is *prima facie* evidence of the existence of such bank and of the genuineness of the notes; sufficient at least to justify the court in refusing to charge that the payment and receipt of such bills in payment for services is *no* evidence that there is such a bank, or that the bills are genuine. Per WRIGHT, J., *Per contra*, see opinion of CAMPBELL, J.

ERROR to the Supreme Court. The plaintiff in error was tried and convicted at a court of Oyer and Terminer, held in the county of Erie, in March, 1864, of the offense of larceny.

The indictment contained three counts. The first charged that, on the 24th of February, 1864, the plaintiff in error feloniously stole, took and carried away, *from the person* of Daniel Main, and the property of said Main, *four* bank-bills or notes of the value and denomination of five dollars each, and one bank-bill or note of the value and denomination of ten dollars. The legal count charged the plaintiff in error with stealing four bank-bills of the value and denomination of five dollars each, and one bank-bill of the value and denomination of ten dollars, of the goods and chattels of some person or persons to the jurors unknown. The third count charged him with feloniously receiving from some person or persons to the jurors unknown, four bank-bills or notes of the value or denomination of five dollars each, and one bank-bill of the value and denomination of ten dollars, the goods and chattels of Daniel Main, knowing the same to have been stolen. The plea was, not guilty.

On the trial, Daniel Main was called as a witness, and testified that, on a Wednesday night, about three weeks before

the trial, he had money stolen from his person at the house of one Baker, in Buffalo. It had been paid to him the same day by W. Hinsler, of Tonawanda, for work that he had done for him. He paid him a ten dollar bill on the American Bank of Rhode Island, and four five dollar bills on other banks—one was on the Oneida County Bank, another on the Central City Bank. He arrived at Baker's tavern about twelve o'clock at night, had a little over thirty dollars with him, fell asleep in the bar-room, was waked by the bar-keeper about two o'clock; looked for his money, and found it was gone; it had been taken from his pocket-book, which was in his pocket when he fell asleep. At the examination of the prisoner, he saw the ten dollar bill and three five dollar bills.

The district attorney also gave evidence tending to show that the prisoner stole these bills from the person of Main in the night-time, on the said Wednesday night. There was no evidence tending to show that the larceny was in the day-time.

At the close of the proof, the prisoner requested the court to charge the jury that, the fact that the ten dollar bill was paid to Main for his services by Hinsler, and was received by Main in payment, was no evidence that the bill on the American Bank of Rhode Island is a genuine bank-bill and that it was of the value of ten dollars. The court refused so to charge, and the prisoner excepted.

The prisoner's counsel further requested the court to charge that they cannot convict for the stealing of the ten dollar bill, for the reason that the instrument in proof of that denomination purports to be a bill of a bank of the State of Rhode Island, and that there is no evidence that there is any such bank, or that the note in evidence is a genuine one. The court refused so to charge, and the prisoner excepted.

The prisoner's counsel further requested the court to charge the jury, that they cannot convict the prisoner under the indictment of stealing from the person of Daniel Main, for the reason that if any larceny took place, it was in the

night-time. The court refused so to charge, and there was an exception.

The jury found the prisoner guilty as charged in the first count of the indictment of grand larceny in stealing from the person, and not guilty as charged in the other counts of the indictment.

The prisoner moved in arrest of judgment, as the record states, which was one month.

On error to the Supreme Court, the judgment was affirmed, and the prisoner now brings error to this court.

*S. Loehand*, for the plaintiff in error.

*C. C. Torrance*, district attorney, for the defendants in error.

WRIGHT, J. The record states that the plaintiff in error, moved in arrest of judgment, but upon what ground does not appear. The point now taken in his behalf is, that there is a fatal variance between the verdict of the jury and the indictment. The verdict was "guilty as charged in the first count of the indictment, of grand larceny in stealing from the person," and the claim is that the count is not good except for simple larceny—that as a charge of stealing from the person of another, it is insufficient in not alleging that the larceny was in the night-time. There is no substance in the point. Grand larceny is defined in the Revised Statutes to be "the felonious taking and carrying away the personal property of another of the value of more than twenty-five dollars," and the punishment prescribed is imprisonment for a term not exceeding five years. (2 R. S. 679, § 63.) A succeeding section provides that "if such larceny be committed by stealing in the night-time from the person of another, the offender may be punished by imprisonment in a State prison not exceeding ten years." (§ 65.) This is simply a provision for increasing the punishment where the offense of grand larceny has been committed under the aggravating circumstances specified. In 1862 a statute was passed, one of the sections of which is as follows:

" Whenever *any* larceny shall be committed by stealing, taking and carrying away *from the person* of another, the offender may be punished as for grand larceny, although the value of the property taken shall be less than twenty-five dollars." (Laws of 1862, chap. 374, § 2). The statutes thus made it grand larceny to steal from the person, though less than twenty-five dollars in value be stolen ; and this, without regard to the circumstance whether the larceny be committed in the day or night-time. The indictment, in this case, charged the stealing of bank-notes of the value of thirty dollars, from the person of Main, and was not defective in omitting to aver that the property was stolen in the night-time. The count was good under the statutes of 1862, and there was no fatal variance between it and the verdict of the jury.

The witness Main testified that the money stolen consisted of four five dollar bills on banks of the State and one ten dollar bill of the American Bank of Rhode Island, and that the same had been received on the day of the larceny from W. Hinsler of Tonawanda, in payment for work he had done for him. The prisoner requested the court to charge that the fact that the ten dollar bill was paid to Main for his services, by Hinsler, and was received by Main in payment, is no evidence that it is a genuine bank-bill and that it was of the value of ten dollars, and that the jury cannot convict for the stealing of the ten dollar bill, for the reason that the instrument in proof purports to be a bill of a bank of the State of Rhode Island, and that there is *no* evidence that there is any such bank, or that the note in evidence is a genuine note. The instruction was refused, and, I think, properly. On a prosecution for stealing bank-bills of another State, when the point is raised, it is incumbent on the public prosecutor to give some proof of the existence of the bank, and that the bills are genuine. He is not required, however, to produce the charter of incorporation of the bank, or show by experts the genuineness of the notes, purporting to have been issued by a particular bank ; that such notes have been received and passed away in part of the currency of the

country, is *prima facie* sufficient to prove the existence of the banks as well as the genuineness of the note.    Here the request was to charge that the fact that the ten dollar bill on the American Bank of Rhode Island was paid to Main for services, and received by him in payment, was *no evidence* that it was a genuine bank-bill and of the value of ten dollars.    In my judgment, such an instruction would have been error.    The fact that it was paid out and received at ten dollars, was some evidence of its value, and that it had been paid and received in the ordinary course of business as part of the currency of the country was competent proof, however slight it may have been, on the question of its being a genuine bank-bill.    As it was competent evidence touching the question, it would have been erroneous to have withdrawn it from the consideration of the jury.

But it was immaterial whether the ten dollar bill was genuine and valuable or not.    Other bills, on banks of the State, amounting to twenty dollars, about which no question was made, were stolen.    The crime was committed if property of any value was taken from the person.

. The judgment should be affirmed.


CAMPBELL, J.    The first count in the indictment charged the prisoner with stealing, from the person of one Daniel Main, four bank-bills, of the value and denomination of five dollars each, and one bill of the value and denomination of ten dollars, and the jury found the prisoner guilty of grand larceny in stealing from the person, as charged in that count, and not guilty as charged in the other counts, one of which charged the stealing the same bills the property of some person to the jurors unknown; and another count charged the prisoner with receiving the same bills, knowing that they were stolen, from some other person to the jurors unknown.

Evidence was given by the people showing that two of the five dollar bills were bills of banks of this State.    The two other fives were of banks to the jurors unknown, and the ten dollar bill was a bill of a bank in the State of Rhode Island, and also showing that all said bills had been received

in payment by Main for labor and services, and that the same were stolen from his person by the prisoner in the night-time. No evidence was given showing that there was no such bank in Rhode Island as the one named in the ten dollar bill, nor was evidence given of the genuineness or value of any of the bills, other than that they were received by Main from his employer in payment for his labor.

No objection was taken to the admission of evidence, nor was any question raised as to the value and genuineness of the bank-bills of this State. The prisoner's counsel requested the judge to charge that the fact that the ten dollar bill was paid to Main for his labor was no evidence that it was genuine, and of the value of ten dollars, and, also, that the prisoner could not be convicted of stealing said ten dollar bill, for the reason that it purported to be a bill of a bank in the State of Rhode Island, and there was no evidence before the jury that there was any such bank, or that the bill was a genuine one. Both requests were refused, and there were exceptions taken. A motion was made in arrest of judgment, which was denied.

The object of the prisoner's counsel on the trial doubtless was to reduce the offense from grand to petit larceny. For that purpose, it was a material question whether there was sufficient evidence before the jury as to the existence of the Rhode Island bank and the genuineness of the ten dollar bill. I am of opinion there was not, and that the prisoner was entitled to the instruction (*People* v. *Caryl*, 12 Wend., 547; *Johnson* v. *The People*, 4 Denio, 364), unless we can see that the result of the conviction would not have been changed had instructions been given and followed by the jury. The punishment for grand larceny is imprisonment in the State prison for a term not exceeding five years; but, if such grand larceny is committed by stealing the personal property of another of the value of twenty-five dollars from his person in the night-time, then the offense may be imprisonment for a term not exceeding ten years. (3 R. S., 5th ed., p. 958, §§ 65, 267.) But the indictment charged the stealing from the person, but not in the night-time. There could be no conviction, therefore,

which would raise the punishment beyond the five years— the limit where the offense is simple grand larceny.

But the act of 1862 (chap. 374, § 2) declares that, where a larceny is committed by stealing from the person, the offender may be punished as for grand larceny, although the value of the property stolen shall be less than twenty-five dollars. In the case before us, there was evidence given and not objected to, showing that some of the bank-bills stolen were bills of banks of this State, and whose value and genuineness were not disputed or questioned. That some portion of the property stolen had value cannot be disputed, and was not questioned. As all the bills were received by Main in payment for his labor, and having no proof to the contrary, it may be claimed that each and all had value. The amount, inasmuch as the property was stolen from the person, is not material. It was not charged in the indictment that this stealing from the person was in the night-time, and the punishment might be the same, whether the amount stolen was ten dollars or twenty dollars. In either case, the term of imprisonment could not exceed five years, and in either case it would be in the discretion of the court to sentence for that period of time or for a shorter time.

We can thus see plainly that the prisoner could not be injured by the refusal to charge by the judge, as requested. I am of opinion the conviction and judgment should be affirmed.

All concur.