THOMAS HIGGINS, Plaintiff in Error, v. THE PEOPLE, Defendants in Error. .

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1872.)

Upon a trial for larceny from the person, where the proof does not warrant a finding of the value of the property at less than $25, a refusal to instruct the jury that the offence is petit larceny unless such value shall be found less than $25 is not error.

Mere proof of the taking of bills of certain denominations, without proof of their genuineness as bills or circulating media, is insufficient to warrant conviction of larceny.

But it will be assumed on appeal that there was evidence of genuineness upon the trial, if the bill of exceptions does not show that it contains all the evidence given.

The taking of property from the person less than $25 in value, and of bills of denominations exceeding in the aggregate that amount, but not shown to be genuine having been proved; *held*, that a request to instruct the jury that there was no evidence of a larceny was properly refused.

*Held*, further, that a conviction of grand larceny would be sustained on appeal, in the absence of a statement in the bill of exceptions that it contained all the evidence given at the trial.

APPEAL from judgment of General Sessions, rendered upon a conviction for grand larceny. The facts appear in the opinion.

*D. O'Brien*, for the plaintiff in error.

*P. C. Williams*, for the defendants in error.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J.    The plaintiff in error was indicted in the Jefferson Sessions for robbery and for stealing from the person of one James Roseboom a wallet of the value of one dollar, twenty-five promissory notes (commonly called bank bills) of national currency, issued by divers banking associations, to the jurors unknown, but of the value in the aggregate of fifty-one dollars.    A more particular description of said notes and bills was to the jurors unknown.

The jury found the prisoner guilty of larceny from the person, charged in the indictment, and not guilty of the robbery.

The court sentenced the prisoner to imprisonment in the State prison at Auburn, at hard labor, for the term of three years and eight months.

The prisoner brings up the record by writ of error.

The prisoner's counsel requested the court to charge the jury that the offence, if any, was petit larceny, unless the jury can safely say, from the evidence, that the pocket-book or its contents were worth more than twenty-five dollars.    The court refused so to charge; but did charge it was immaterial how much it (the pocket-book) contained; that the uncontradicted evidence, as to the amount of money by Roseboom, was that the amount was fifty-one dollars.

Section 2 of chaper 374 of the Laws of 1862 provides that whenever any larceny shall be committed by stealing, taking and conveying away from the person of another, the offender may be punished as for grand larceny, although the value of the property taken shall be less than twenty-five dollars.

It was held by the Court of Appeals in *Williams* v. *The People* (24 N. Y., 405) that the word "may," in the foregoing section, is not imperative, but gives the court, in which the prisoner is convicted of stealing from the person less than

twenty-five dollars, the same degree of punishment that would be proper, in its estimation, to inflict had the conviction been for grand larceny.

It was also held in the same case that it was the right of the prisoner to have the jury instructed that they should find in their verdict the value of the property stolen, to the end that the court might have satisfactory evidence of value to guide them in the exercise of the discretion vested in them by this section.

The finding as to the value can be of no importance to the prisoner, unless there is proof in the case which might authorize the jury to find it to be less than twenty-five dollars. When all the evidence is that the value exceeds twenty-five dollars, the refusal to instruct could do him no possible injury.

The question, then, is whether there was any evidence in the case which could authorize the jury to find the value of the property stolen to be less than twenty-five dollars.

Roseboom, from whom the property is alleged to have been stolen, was the only witness as to the value, and he says the bills which he lost were in a pocket-book; counted it before leaving his shop at Dexter, about three o'clock P. M.   He did not count it all, but he had fifty-four dollars and some change.   Went to Watertown and did not see the money to count it again that day.   He last saw it in the evening, just before leaving Watertown; he had it in his pocket-book, and took out the pocket-book at the Exchange Hotel, and paid for a cigar; the bills he claims to have lost were in the pocket-book then, but he did not look to see; he thought they were.   After arriving at the hotel in Brownville, he paid a doctor ten cents for medicine from change he had in his pocket-book; it lay on the top of a $2 bill.   He then observed the bills, put the pocket-book back into his pocket.   Roseboom admitted he had been drinking during the afternoon after leaving Dexter, and before his money was taken.   He had taken out his pocket-book in the hotel and was advised by one Hoover, who was with him, to put it back into his pocket.   Hoover says he saw a lot of bills

Higgins *v.* The People.

in his pocket-book, and saw him put it in his pocket; this was just before it was stolen. Two witnesses on the part of the defence testify that Roseboom had out his pocket-book in the tavern just before the struggle in which he says it was stolen from him, when offering to bet about running.

The evidence of Roseboom is positive that he had in bills the amount he specified at three o'clock P. M. His pocket-book, with bills in it, was seen by him at Watertown early in the evening, and at Brownville a short time before the stealing.

If any fact can be said to be established, the possession of fifty-one dollars in bills by Roseboom, at the time of the taking, must be held to be proved.

It is possible that Roseboom may swear falsely; he may have been so intoxicated as not to know or accurately remember all that occurred; he may have dropped from his pocket-book some of the bills while he had it out paying for articles purchased, or when offering to bet. If the proof would authorize the jury to find that part of the money was lost, it would also justify the finding that he had lost the whole, and there was none in the pocket-book when it was taken.

When it is shown that the money was in the pocket-book at three o'clock P. M., the presumption is that it remained there, unless the circumstances proved justify the inference that it was lost, and that inference cannot fairly be made in this case; on the contrary, the evidence of Roseboom strengthens the presumption that the money was still in the pocket-book.

The jury were justified in finding that the money in the pocket-book exceeded in value twenty-five dollars, and they could not find upon the evidence that the value was under twenty-five dollars.

The remark of the court in reply to the request to charge the proposition above stated, that it was immaterial how much the pocket-book contained, was erroneous as an abstract proposition, as is shown in the opinion of DENIO, Ch. J., in *Williams* v. *The People* (*supra*), but the remark could not, as I have attempted to show, do any injury to the prisoner

as there was no evidence to authorize a finding that the property taken was worth less than twenty-five dollars.

To justify a conviction for larceny, it was incumbent on the public prosecutor to prove that property which by law might be the subject of larceny was unlawfully taken. At common law the felonious taking of choses in action was not larceny. (Arch. Crim. Pl., 164.) The stealing of bills, &c., is made larceny by statute. To be the subject of larceny they must be shown at least *prima facie* to be genuine, and, if made by a corporation of another State, *prima facie* evidence of its legal existence must be given. (*The People* v. *Caryl*, 12 Wend., 547; *Johnson* v. *The People*, 4 Den., 364.)

BRADLEY, J., was of the opinion that evidence that the prisoner had passed the bills as genuine would have been sufficient; so would evidence that bills of the same kind have been received and passed away in the ordinary course of business as a part of the business of the country.

In the case of *Fallon* v. *The People* (2 Keyes, 145), the money alleged to be stolen consisted of four five-dollar bills on banks in the State, and one ten-dollar bill of the American Bank of Rhode Island, and had been received on the day of the larceny from W. Hinslee, of Tonawanda, in payment for work done for him by the witness from whom the money was stolen.

The prisoner requested the court to charge that the fact that the ten-dollar bill was paid to Moin for his services by Hinslee, and was received by Moin in payment, was no evidence that it was a genuine bank bill, and that it was of the value of ten dollars, and that the jury could not convict of the stealing of the ten-dollar bill for the reason that the instrument in proof purported to be a bill of a bank of Rhode Island, and there was no evidence that there was any such bank, or that the note was genuine.

The instruction was refused and the Court of Appeals held the refusal was proper. WRIGHT, J., says: "On a presentation for stealing bank bills of another State, when the point

is raised it is incumbent on the public prosecutor to give some proof of the existence of the bank, and that the bills are genuine; that such notes have been received and passed away as part of the currency of the country, is *prima facie* sufficient to prove the existence of the bank, as well as the genuineness of the notes. As the request was to charge that there was no evidence of the existence of the corporations, or of the genuineness of the bills, it was properly refused."

All the proof there was of the kind or amount of money in the pocket-book is that it consisted of three ten-dollar bills, four five-dollar bills, and a one-dollar bill; by what person or corporation issued, or whether they were genuine, there is not a particle of proof. Unless, therefore, this defect was cured by the omission of the prisoner's counsel to raise the objection that there was not sufficient proof of the value of the property to render the crime grand larceny, it was fatal to the verdict.

Judgments in criminal cases, except in capital cases and cases in which the *minimum* punishment is State prison for life, will not be reversed except for such defects appearing on the face of the record as render the conviction illegal or void, or for erroneous rulings on the law, to which exceptions were taken on the trial, and are contained in a bill of exceptions.

In *La Beau* v. *The People* (34 N. Y., 223, 228), WRIGHT, J., says: "We cannot entertain any question in respect to the sufficiency or strength of evidence that produced the conviction."

In the *People* v. *Haynes* (14 Wend., 546), it is said: "No bill of exceptions can be taken in a criminal case to authorize a Superior Court to correct an erroneous opinion of the court below or the decision of a jury upon matters of fact merely." (See, also, same case, 11 Wend., 557.)

It was formerly the practice for a Court of Sessions or of Oyer and Terminer, after verdict of guilty and before judgment, to ask the opinion of the General Term when in doubt whether the acts proved constitute a criminal offence. (*The People* v. *Caryl*, 11 Wend., 547; *Ex parte Barker*, 7 Cow.,

143; *The People* v. *Cummins*, 3 Park., 343.) But the practice has fallen into disuse.

Such a practice enabled the prisoner to obtain a review of the evidence, which he could not do on writ of error.

The prisoner's counsel called on the court at the close of the evidence to instruct the jury that there was not sufficient evidence to authorize the jury. to find the prisoner guilty of larceny. The court refused to so instruct the jury, and he thereupon excepted. This refusal was equivalent to an instruction to the jury that there was sufficient evidence to authorize them to convict the prisoner.

There was at least sufficient evidence to require the jury to convict the prisoner of stealing the pocket-book, which was shown to be worth seventy-five cents.

When, therefore, the prisoner's counsel asked the court to discharge the prisoner or instruct. them they could not safely convict of any offence, he asked more than he had the right to require, and the court was justified in refusing to grant it.

Had he limited his request to an instruction that they could not safely convict of grand larceny it should have been granted.

A bill of exceptions is supposed to contain only so much of the evidence as is necessary to present the questions of law raised on the trial. In the absence of a statement in the bill that it contains all the evidence given on the trial, the presumption is that it does not.

We must assume, therefore, that there was evidence given as to the value of the bills not incorporated in the case which was sufficient to authorize a conviction of grand larceny.

It is stated in the bill of exceptions that the prisoner's counsel moved, after verdict, in arrest of judgment on the ground, amongst others, that the money alleged to have been taken is not sufficiently described in the indictment or proved on the trial, and that the verdict is against the law and the evidence.

A writ of error does not bring up for review any errors but what occurred on the trial. (*Fallon* v. *The People, supra.*)

It does not reach and the court cannot review the action of the inferior court in granting or refusing a new trial because the verdict was against the evidence and not supported by it. (*Fallon* v. *The People, supra.*)

The remaining points discussed by the counsel do not require any discussion as they were properly disposed of by the Court of Sessions.

The judgment must be affirmed.

Judgment affirmed.