WILLIAMS *v*. THE PEOPLE.

24    405
126    463
24    405
e 75 AD²450

The word "*may*," in section thirty-three of the "act in relation to police and courts in the city of New York" (ch. 508 of 1860), is enabling, and not mandatory.

Whether that section authorizing the infliction of the punishment of grand larceny for the theft from the person of another of less than twenty-five dollars is local within the meaning of article III, section 16 of the Constitution: *Quære*.

Under an indictment charging the larceny of several sums, amounting to more than $25, the prisoner has a right to have the jury instructed to find whether the sum stolen, it being from the person of another in the city of New York, was more or less than twenty-five dollars.

THE plaintiff in error was convicted, in the Court of General Sessions of the Peace of the city and county of New York, of stealing money. The indictment charged the stealing, from the person of Eliza Denike, of divers bank notes of the different amounts usually issued, and of divers different kinds of gold and silver coins, in such a manner that, if the statement were assumed to be correct, the amount stolen would be several hundred dollars. On the trial, after not guilty pleaded, it was proved that the prisoner stole from the person of the individual named seven dollars while she was in one of the streets of the city. The counsel for the defendant asked the court to charge the jury that they could only find the defendant guilty of petit larceny; but the court refused to give

such instruction, and the counsel excepted. The court there-
upon charged the jury that, if they found that the defendant
stole from the person of Eliza Denike the sum of seven dol-
.lars, they might render a general verdict of guilty under the
indictment; to which the defendant's counsel also excepted.

The provision of the statute relating to larceny from the
person, upon which the question arises, is section thirty-
three of an act entitled "an act in relation to police and courts
in the city of New York," and is as follows: "Whenever any
larceny shall be committed in said city and county by stealing,
taking and carrying away from the person of another, the
offender may be punished as for grand larceny, although the
value of the property taken shall be less than twenty-five dol-
lars. Attempts under similar circumstances may be punished
as for attempts to commit grand larceny."

The prisoner's counsel requested the court to hold and charge
that the section was a violation of the Constitution; and he
excepted to the refusal so to charge. There was a general
verdict of guilty, and the prisoner was sentenced to imprison-
ment in a state prison for the term of two years and nine
months. The writ of error was brought from a judgment of
affirmance rendered in the Supreme Court.

*Henry L. Clinton,* for the plaintiff in error.

*A. Oakey Hall,* District Attorney, for the People.

DENIO, J. The counsel for the plaintiff in error maintains
that the statutory provision under which this conviction was
had is a violation of the clause of the Constitution which
declares that "no local or private bill which may be passed by
the legislature shall embrace more than one subject, and that
shall be embraced in its title." (Art. 3, § 16.) But let us sup-
pose an act which is local in many of its provisions, and yet
contains an enactment which is neither local nor private, but
which relates to every part of the State, and is essentially
public in its motives and objects: Would such an enactment

be void on account of its connection with the local provisions? That precise question came before the court in *The People* v. *McCann* (16 N. Y., 58). An act, passed in the year 1855, provided that where a conviction should be had in any Court of Oyer and Terminer in the State, for an offence punishable with death or imprisonment for life, the conviction might be reviewed in the Supreme Court and in the Court of Appeals, upon questions of fact, and decided according to the weight of the evidence, and also upon the law, whether any exceptions were taken upon the trial or not. There were other provisions of the act which related to courts in the city, and which were assumed to be local in their character. The court held that the constitutional provision did not apply, and reversed the judgment of affirmance which had been rendered in the Supreme Court, on the ground of an erroneous ruling at the trial, which had not been excepted to. We held, also, that no constitutional objection arose out of the consideration that the provision in question was not referred to in the title of the act. The provisions of the act under direct consideration, which relate to police justices and courts and their clerks, may be considered local; but I am of opinion that the thirty-third section, which provides for an increased punishment for petit larceny, when committed by stealing from the person, in the city of New York, is not local within the meaning of the Constitution. It has, no doubt, features which savor of locality, for it punishes a well-known common-law offence more severely, if committed under peculiar circumstances within the limits of that city, than if committed elsewhere. But it prescribes the rule of conduct for all persons, whether residents of the city or of any other part of the State, and its increased penalties are intended to protect residents of other localities equally with inhabitants of the city; and it was probably intended especially for the security of strangers and sojourners, who are apt to lack the habitual caution of permanent citizens of large towns. Offenders when convicted are to be imprisoned in one of the prisons of the State out of the city, and to be provided for at the expense of the State at

large; and the disqualification which attaches to a convict under the act affects him wherever he may be in this State. I cannot think that a statute having such consequences is to be classed with special provisions making appropriations for particular roads, public buildings, or the like, situated in particular local divisions. Upon this point, I concur with the views expressed in the opinion given in the Supreme Court.

The plaintiff in error relies upon another point, which is not adverted to in the opinion of the Supreme Court, and seems to have been made for the first time here. It is, that the court charged the jury that they might render a general verdict of guilty; which instruction is alleged to be erroneous, because by it the jury were permitted to find the defendant guilty of stealing all the money described in the indictment, which, being above the value of twenty-five dollars, obliged the court to impose the penalty annexed to the offence of grand larceny, whereas if the verdict had been for stealing to the amount of seven dollars only, though it was from the prosecutrix's person, she might, in the discretion of the court, have been punished by fine and imprisonment only. This is based upon the idea that the word *may*, as used in the section, is not intended to be imperative, but enabling only, thus committing to the court a discretion in such a case to inflict the punishment appropriate to petit larceny, or the higher penalty of imprisonment in a state prison according to its view of the nature and aggravation of the offence. There are many cases in which the sense of a statute requires that this word should be construed like *shall*, and this would be clearly the meaning in this case if it was a newly created offence to which the legislature was affixing the punishment; for then if the prescribed punishment could not be inflicted the offence would not be punished at all, which would be plainly contrary to the intention of the statute. But here the crime of petit larceny which, by the general law of the State is punished by fine and imprisonment in a county jail or both, is made punishable, when committed under a special circumstance of aggravation, by imprisonment in the state prison. There is

Williams *v.* The People.

nothing *a priori* unreasonable in leaving it to the court to determine in such a case whether the mitigated or the higher punishment shall be visited on the offender. There are examples of confiding such a discretion to the courts, as in the case of cheating by false pretences, and in arson in the fourth degree, and perhaps in some other cases. The primary and most common use of the word *may* certainly is that contended for, namely, the giving permission to perform the act referred to; and where there is nothing requiring it, in the connection of the language, or in the sense and policy of the provision, I do not think we should be warranted in giving the word an unusual or even a secondary meaning.

It is a little difficult to perceive the drift of the prayer for instructions interposed by the defendant's counsel on the trial. In terms, it was that the jury should be charged that under the evidence the defendant could only be convicted of petit larceny. If by this was meant that she could only be convicted of the simple offence of stealing an amount less than twenty-five dollars, it was, of course, inadmissible, as it was proved that the theft was from the person of the owner of the money. But if the object was to obtain a direction that the verdict should indicate the amount stolen under the circumstances charged, or that it was less than twenty-five dollars, so as to exonerate her from the consequence of having stolen an amount which would constitute grand larceny, so that the court would not be compelled to sentence her to the state prison, she was clearly entitled to that direction. I am inclined to think that the latter may have been the meaning of the request to charge. But however this may be, the actual charge given, which was duly excepted to, was, that if the defendant was shown to have stolen from the person of the prosecutrix to the amount of seven dollars they might render a general verdict of guilty. Under this charge a general verdict was given, and, upon the record formed by the indictment and by that verdict, the court could not possibly have given any other judgment than one for imprisonment in a state prison; whereas, if the amount stolen had been truly stated in the verdict, the judgment might,

notwithstanding the statute, have been that annexed by law to a simple petit larceny. As the judge who tried the issue was also to pronounce the sentence, it is altogether improbable that the error in form, which I suppose to have been committed, has at all prejudiced the defendant. But it is very plain to my mind that an accused person has an absolute right to have such instructions on matters of law given to the jury as will shield him from a verdict for a different and higher offence from that of which he is proved guilty. Hence, I am for reversing the judgment, and awarding a new trial in the Court of General Sessions.

All the judges concurred, except that SUTHERLAND, J., thought the provisions of section 33 local within the meaning of the Constitution, and the court did not pass upon that point.

Judgment reversed and new trial ordered.