IN THE MATTER OF ISADORE BAYARD.

*Constitution — cruel and inhuman punishment — an act inflicting a greater punishment for an offense when committed in one part of the State than when committed in another is not unconstitutional.*

There is no provision of the constitution which forbids the legislature to pass a local act fixing the punishment for crime. Therefore, although the legislature has established a general maximum of punishment throughout the State for a crime, it may change or increase the punishment as to particular localities.

Section 29 of chapter 456 of 1880, providing that a person convicted before the recorder of Cohoes of petit larceny, as a first offense, shall be punished by a fine not exceeding $250, or by imprisonment in the Albany Penitentiary at hard labor for a term not exceeding one year, or by both, is not rendered unconstitutional and void, as inflicting a cruel and unusual punishment, by the fact that in other parts of the State petit larceny, as a first offense, is punished only by a fine not exceeding $100 or by imprisonment not exceeding six months, or by both.

*Semble*, that that portion of the act is not of a local or private, but of a public nature.

APPEAL by the people from an order made at Special Term, discharging the respondent Bayard from imprisonment upon the return to a writ of *habeas corpus*.

*D. Cady Herrick*, district attorney, for the people.

*A. E. Valois*, for Bayard.

RUMSEY, J.:

In 1879 the legislature conferred on Courts of Special Sessions exclusive jurisdiction, among other things, to try charges of petit larceny not charged as a second offense.

The recorder of the city of Cohoes was vested with all the powers of Courts of Special Sessions. In 1880 the legislature passed an act by which, among other things, it was provided that when any person is brought before said recorder charged with "petit larceny, first offense, * * * such recorder shall, upon conviction of such offender, have power to punish by a fine not exceeding two hundred and fifty dollars, or by imprisonment in the Albany Penitentiary at hard labor for a term not exceeding one year, or by both such fine and imprisonment." (Laws of 1880, chap. 456, § 29.) By the general law the punishment for petit larceny, first offense, in other parts of the State is imprisonment for six months or by fine not exceeding $100, or both. Such being the law Bayard was tried and convicted before the recorder of Cohoes for petit larceny and sentenced to be imprisoned for one year. He sued out his writ of *habeas corpus* before a justice of this court, and upon the hearing after return, was discharged. This appeal is brought to review the order discharging him. The learned justice held that the law of 1880 above quoted was unconstitutional and that it gave no jurisdiction to the recorder of Cohoes to sentence for one year for petit larceny committed in that city, while the punishment for the same offense elsewhere in the State was but half so great.

It may be premised that the courts are at liberty to declare a statute unconstitutional only when it conflicts with some express provision or limitation of the Constitution. They ought not to, nor can they declare a law invalid because, in their judgment, it conflicts with the spirit supposed to pervade the Constitution, but

not expressed in words. "When a statute is challenged as in conflict with the fundamental law, a clear and substantial conflict must be found to exist to justify its condemnation." (*Matter of N. Y. Elevated R. R. Co.*, 70 N. Y., 327, 342; *People* v. *Albertson*, 55 id., 50, 54; *People* v. *Comstock*, 78 id., 356.) Judge COOLEY has so fully and accurately laid down the law on this subject that it is necessary only to refer to his learned work to ascertain the extent of the duty, and therefore of the right, of the courts to declare an act of the legislature to be void. (Cooley Const. Lim., 159, 171, 174.)

Whether or not this is a local act we do not think important in this connection. The Constitution has forbidden the legislature to pass private or local bills in certain cases, but in all other cases the law-making power is unrestrained in that regard. There is authority for saying that this portion of the law under consideration is not local or private, but public. (*Williams* v. *People*, 24 N. Y., 405, 407; *State* v. *Co. Comrs.*, 29 Md., 516.) But we do not think it necessary to decide that question.

Is the punishment of petit larceny in the city of Cohoes by imprisonment for one year, when outside of that city it is punishable but by six months' imprisonment, a cruel and unusual punishment, so that the law authorizing it is invalid?

The learned justice who made the order under consideration thought that as petit larceny was punished generally throughout the State by imprisonment for six months only, it was cruel and unusual to increase the punishment for that offense when committed within the city of Cohoes.

We first find the injunction against cruel and unusual punishment in the Declaration of Rights, presented by the convention to William and Mary before settling the crown upon them in 1688. That declaration recites the crimes and errors which had made the revolution necessary. These recitals consist of the acts only of the former king and the judges appointed by him, and one of them was that "illegal and cruel punishment had been inflicted." (Stephen's English Const., 44.) The punishments complained of were the pillories, slittings and mutilations which the corrupt judges of King James had inflicted without warrant of law, and the declaration was aimed at the acts of the executive, for the judges appointed

by him, and removable at pleasure, were practically part of the executive. It clearly did not then refer to the degree of punishment, for the criminal law of England was at that time disgraced by the infliction of the very gravest punishment for slight offenses, even petit larceny then being punishable with death. But the declaration was intended to forbid the imposition of punishment of a kind not known to the law, or not warranted by the law.

The courts have rarely had occasion to construe the meaning of the phrase " cruel and unusual punishment." And since no punishment can be inflicted until authorized by the legislature, which is often elected, and represents the general moral idea of the people, it is not likely that they will often be called on to construe it. The text writers, however, have discussed it to some extent, and they seem to understand it as prohibiting any cruel or degrading punishment not known to the common law, and probably, also, those degrading punishments which, in any State, had become obsolete when its existing Constitution was adopted, and punishments so disproportioned to the offense as to shock the sense of the community. (Cooley Const. Lim., 329; Story on Const. Law, § 1903; Cooley Prin. Const. Law, 296; *Ho Ah Kow* v. *Nunan*, 18 Am. L. Reg. [N. S.], 676.) Giving the clause this broad meaning, it will yet not be broad enough to forbid the passage of the law under consideration.

The punishment authorized by this law was the ordinary kind of punishment for all minor offenses, and it cannot fairly be said to be either cruel or unusual, unless we are prepared to say that the legislature, having established a general maximum of punishment throughout the State, cannot increase or change it, as to particular localities, to meet especial emergencies. That the law-making power can fix the punishment for crime and determine its severity cannot be denied. (*Commonwealth* v. *Hitchings*, 5 Gray, 482–486; Cooley Prin. of Const. Law, 296.) There is no constitutional provision which limits the power of the legislature in criminal any more than in civil cases. In each the rules are the same, and if we wish to limit either we must find the right in the Constitution or we cannot find it at all. Many cases can be imagined where especial circumstances make it advisable that some act done in a particular locality shall be declared a crime, or that it shall be necessary to prevent in that

place the commission of some peculiar crime. Of this necessity the legislature must be the sole arbiter.

We find in practice that many acts are crimes and punishable if done in one part of the State, which are innocent if done in another. We can see no difference in principle between the act in question and the large number of laws of the kind mentioned above. It may well be that the state of affairs in Cohoes when this act was passed was such as to require stringent regulations for the prevention of petty crimes. If it were so, it was for the legislature to decide and, having decided, to act accordingly. If the law applied to all persons in that locality we do not think it violates the Constitution. (Cooley Const. Lim., 390.)

The reasoning of Judge DENIO in *Williams* v. *People* (24 N. Y., 405, 407, 408) is authority in favor of the validity of the law in question, and as the report shows that all the judges except SUTHERLAND, J., concurred in his opinion the reasoning has almost the weight of an express decision, although the *court* did not pass upon the question.

We do not consider the expediency or propriety of this act. That is of no importance to our decision. Laws may be inexpedient, oppressive, even cruel, but unless they infringe upon some constitutional restrictions the remedy is with the electors and not with the courts.

The order discharging the prisoner must be reversed and the prisoner remanded.

LEARNED, P. J., concurred.

OSBORN, J., dissented on the opinion of WESTBROOK, J., at Special Term.

Order reversed and prisoner remanded.